**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

**TYLER NATHANIEL TOLIVER**                                        **PETITIONER**

**VS.**                    **CASE NO.: 5:14CV00200 BSM/BD**

**RAY HOBBS, Director,
Arkansas Department of Correction**                             **RESPONDENT**

**RECOMMENDED DISPOSITION**

**I.**       **Procedures for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Brian S. Miller. Mr. Toliver–or any party–may file written objections to this Recommendation.

Objections must be specific and must include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

An original and one copy of your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation. A copy will be furnished to the opposing party.

If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may also waive any right to appeal questions of fact.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## II.  Introduction

On May 20, 2014, Petitioner Tyler Nathaniel Toliver filed a petition for writ of habeas corpus alleging several claims of ineffective assistance of counsel.  (Docket entry #2)  Respondent Ray Hobbs filed a response, noting that Mr. Toliver had not presented his claims to Arkansas state courts, and had only a few days left to do so.  Mr. Hobbs asked the Court to dismiss Mr. Toliver's petition so he could pursue state remedies.  (#8)

This Court stayed the case to allow Mr. Toliver an opportunity to raise his claims in state court.  (#9)  Mr. Toliver attempted to pursue his state court remedies, but it appears that his attempts were untimely and that his federal claims are, therefore, procedurally defaulted.  (#10, pp. 3-4)

The Court reopened this case and gave Mr. Toliver an opportunity to provide summaries of evidence that he might use to overcome procedural default.  (#11, #12)  Mr. Toliver provided a response (#13), and Mr. Hobbs addressed the merits of Mr. Toliver's claims.  (#17)

## III.  Discussion

Mr. Toliver raises the following claims for relief: (1) his attorney would not allow him to see or discuss any evidence against him (#2, p. 5); (2) paperwork was withheld and

not filed in a timely manner (#2, p. 6); (3) he was forced to take a plea agreement that was retracted after he entered his plea (#2, p. 8); and (4) he was misled about the sentence he agreed to. (#2, p. 9)

The Court has construed Mr. Toliver's petition liberally. It appears that he challenges the effectiveness of his counsel and the voluntariness of his guilty plea. Beyond these general grounds for relief, however, the basis for any other claim is unclear. Even construing the petition liberally, none Mr. Toliver's allegations support habeas relief.

    A.    *Procedural Default*

It appears likely that Mr. Toliver has defaulted all of his claims by failing to develop the factual basis of his claims in state court. After this Court's order staying this case, Mr. Toliver filed a Rule 37 petition with the state trial court, but the state court found the petition to be untimely. (#10) In spite of the apparent default, this Court will address the merits of Mr. Toliver's petition for the sake of judicial economy. See 28 U.S.C. § 2254(b)(2).

    B.    *Ineffective Assistance of Counsel*

The Sixth Amendment guarantees criminal defendants effective assistance of counsel at every stage of a criminal trial, "in order to protect the fundamental right to a fair trial." *Lockhart v. Fretwell*, 506 U.S. 364, 368, 113 S. Ct. 838, 842 (1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 684 (1984)). "[T]he right to the effective

assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." *Id* (quoting *U.S. v. Cronic*, 466 U.S. 648, 658 (1984)).

A criminal defendant's right to the effective assistance of counsel "is denied when defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S.Ct. 1, 4 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) and *Strickland*, 466 U.S. at 687). "Judicial scrutiny of counsel's performance is highly deferential, indulging a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment." *Bucklew v. Luebbers*, 436 F.3d 1010, 1016 (8th Cir. 2006) (citing *Strickland*, 466 U.S. at 689); see also *Middleton v. Roper,* 455 F.3d 838, 845 (8th Cir. 2006).

A defendant's sixth amendment right to counsel extends to plea bargaining. *Lafler v. Cooper*, 132 S. Ct. 1376 (2012) (citing *Missouri v. Frye*, 132 S. Ct. 1399 (2012)). During plea negotiations, defendants are "entitled to the effective assistance of competent counsel." *Id*. (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970).

The two-prong test announced in *Strickland* applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370 (1985). The first *Strickland* prong requires a showing that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases. To satisfy the second or "prejudice" prong, a petitioner must show that there is a

4

reasonable probability that, but for his counsel's errors, he would not have pleaded guilty, and instead, would have insisted on going to trial. *Id*. at 59.  Mr. Toliver has failed to show either deficient performance or resulting prejudice in any of his three ineffective-assistance claims.

      1.    *Access to Evidence*

Mr. Toliver first alleges that his attorney would not let him view, possess, or discuss any evidence against him.  (#2, p. 5)  As a result, he says, he had no knowledge of the details or evidence in his case when he entered his guilty plea.  (#2, p. 5) He also maintains that the state found no inculpatory evidence from searching his residence, other than drug paraphernalia that could not be connected to him because the "residence wasn't registered to [him]."  (13, p. 3)  In addition, he alleges that the "chain of evidence should prove that [the state] never had the physical evidence to support a conviction of possession of a controlled substance."  (#13, p. 5)  Mr. Toliver does not explain how he knows this, as he also argues that he still has not been able to view any of the evidence against him.  He has failed to support this claim with any specific allegations or references to documentary evidence.

Furthermore, Mr. Toliver gave sworn testimony at his plea hearing that he was guilty of possessing methamphetamine and drug paraphernalia.  (#17-1, p. 6)  Sworn statements made during a plea hearing create a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977).  After-the-fact

conclusory allegations regarding a plea are generally subject to summary dismissal. *Id*. at 75. Here, Mr. Toliver has failed to demonstrate why this Court should now disregard his prior sworn statements. Significantly, he does not assert in his petition that he did not, in fact, possess methamphetamine or own the discovered paraphernalia. (#2)

Even if Mr. Toliver had demonstrated that his counsel provided deficient assistance in failing to discuss evidence with him, he has not shown any prejudice resulting from the alleged deficient assistance. In fact, he does not allege that he would have rejected the plea deal and insisted on going to trial had his counsel provided different information or advice. (#2)

    2.    *Plea Agreement*

Mr. Toliver also alleges that he was forced to take a plea agreement that was retracted after he entered his guilty plea. (#2, p. 8) The record shows that Mr. Toliver agreed to a plea deal requiring him to serve two years in a regional correctional facility ("RCF"), with four additional years suspended. (#17-1, p. 6) As a condition of Mr. Toliver's suspended sentence, he was required to complete a 270-day drug treatment program. (#17-1, p. 10) Due to a prior domestic battery conviction, however, Mr. Toliver was not eligible for placement in a RCF. (#8-1; #17-2, pp. 2-3) Without this placement, Mr. Toliver could not participate in the drug treatment program that was a condition of his suspended sentence. So about two weeks after his original plea hearing, Mr. Toliver returned to court for a second hearing. (#17-2)

At the second plea hearing, Mr. Toliver stated that he understood the terms of his second plea agreement.  Mr. Toliver confirmed that the agreement was for 72 months' imprisonment in the Arkansas Department of Correction on each of his two felony counts, to run concurrently.  (#17-2, pp. 5-6)  Mr. Toliver did not raise any issue with the agreed sentence, his attorney's representation, or a lack of information about his case.  Mr. Toliver did not object to the proceeding, and he declined to make a statement beyond affirming his guilty pleas and agreeing to the new plea deal.  (#17-2)

During the first plea hearing, the sentencing court noted that Mr. Toliver had a prior felony and six class A misdemeanor convictions.  (#17-1, p. 7)  Clearly, both the prosecuting attorney and Mr. Toliver's counsel should have been aware of Mr. Toliver's domestic battery conviction before the first plea hearing.  Mr. Toliver's counsel should have determined eligibility for RCF placement before recommending the sentence to the court as part of the first plea agreement.

With that said, however, the terms of the first plea agreement fell through, not due to any action or inaction on the part of Mr. Toliver's counsel, but rather, because of Mr. Toliver's own past criminal conduct.  While his counsel may be faulted for failing to determine eligibility for the RCF placement, Mr. Toliver is wholly responsible for his ineligibility.  In short, any potential prejudice was the result of Mr. Toliver's own conduct, not that of his counsel's.

3.  *Sentence*

Mr. Toliver also alleges that he was misled about the sentence he agreed to in the second plea deal. (#2, p. 9) Specifically, he maintains that he agreed to one six-year term in exchange for dismissal of his other charge. (#2, p. 9) He points to nothing in the record, however, to support this assertion.

Mr. Toliver knew that he was facing a maximum twelve-year aggregate sentence when he entered the first plea agreement. (#17-1, p. 3) He was also aware of a potential habitual-offender enhancement. (#2, p. 8) At the second sentencing hearing, the court asked Mr. Toliver to confirm that his new plea agreement called for his incarceration for 72 months in the Arkansas Department of Correction on each count, with the sentences to run concurrently. (#17-2, pp. 5-6) Mr. Toliver confirmed that this was, in fact, the new plea agreement. (#17-2, p. 6) He reaffirmed his guilt to the two counts, and the court imposed the sentence Mr. Toliver had confirmed. (#17-2, pp. 5-8) There is no mention of dismissing one of Mr. Toliver's charges during either the first or second plea-and-sentencing hearing. (#17-2) There is no basis to support an ineffective-assistance-of-counsel claim because, factually, Mr. Toliver's allegations in support of this claim are flatly contradicted by the record.

C.  *Failure to Follow Arkansas Law*

In addition to his ineffective-assistance claims, Mr. Toliver also alleges that "paperwork" was withheld from him and was not filed in a timely manner. (#2, p. 6) For

support, he states that the judge at his "8.1 hearing" told him that affidavits had to be filed within 72 hours or he had to be released.[1] (#2, p. 6)  Mr. Toliver does not challenge the fact that he had a prompt first appearance.  A violation of a state rule regarding the time to file documents, by itself, is not pertinent to federal habeas proceedings.

Federal habeas courts are not arbitrators of state law or state procedure. *Sweet v. Delo*, 125 F.3d 1144, 1151 (8th Cir. 1997).  This Court can consider Mr. Toliver's federal habeas petition only on grounds that he is being held in violation of the United States Constitution or federal law.  28 U.S.C. § 2254(a).  Thus, Mr. Toliver's claims based on allegations that Arkansas law was not followed should be denied.

D.    *Voluntary and Intelligent Plea*

Mr. Toliver does not explicitly challenge his guilty plea.  (#2)  His allegations, if broadly interpreted however, raise a question as to whether his guilty plea was made voluntarily and intelligently.  A guilty plea is constitutionally valid only to the extent that it is voluntary and intelligent. *Bousley v. United States*, 523 U.S. 614, 618, 118 S .Ct. 1604 (1998).

Mr. Toliver argues that, due to a lack of information, he was "coerced" into accepting a plea deal.  (#2, p. 8; #13, p. 3)  This alleged coercion stemmed from the prosecutor's "threats of 'Habitual Offender.'"  (#2, p. 8)  During his plea hearing, Mr.

---

[1] Rule 8.1, Arkansas's "Prompt First Appearance" rule, requires an arrested and detained person's appearance before a judicial officer without unnecessary delay. ARK.R.CRIM.P. 8.1.

9

Toliver specifically acknowledged that he was not forced or pressured into entering a guilty plea, and that he was voluntarily pleading guilty. (#17-1, pp. 5-6)

Mr. Toliver maintains that his attorney misled him about his plea deal (#2, p. 9) and, because of this misinformation, he unknowingly agreed to a twelve-year sentence. (#13, p. 4) As noted, Mr. Toliver did not receive a twelve-year prison sentence. He received two concurrent six-year sentences, so the total length of his incarceration is six years. (#8-1, p. 4; #17-2, p. 7) In any event, Mr. Toliver specifically confirmed that two concurrent six-year terms was, in fact, the new plea agreement. (#17-2, p. 6)

Mr. Toliver also argues his attorney refused to allow him to withdraw his first negotiated guilty plea. (#13, p. 4) Mr. Toliver states that his attorney told him he had no choice but to accept the new sentence because he had already pleaded guilty. (#13, p. 4) Mr. Toliver had two weeks between the first and second plea-and-sentencing hearings, yet he did not raise any issue with the voluntariness of his plea when he returned to court for the second hearing. Instead, when asked whether he would reaffirm the entry of a guilty plea, Mr. Toliver answered, "Yes." (#17-2, pp. 5) His after-the-fact allegations to the contrary are insufficient to raise an issue for habeas relief.

## IV. <u>Certificate of Appealability</u>

When entering a final order adverse to a petitioner, the Court must issue or deny a certificate of appealability. Rule 11 of the Rules Governing Section 2254 Cases in the United States District Court. The Court can issue a certificate of appealability only if Mr.

Toliver has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). In this case, Mr. Toliver has not provided a basis for issuing a certificate of appealability.

V.      **Conclusion**

The Court recommends that Mr. Toliver's petition for writ of habeas corpus be dismissed, with prejudice. The Court further recommends that no certificate of appealability be issued.

DATED this 24th day of November, 2014.

_____
UNITED STATES MAGISTRATE JUDGE